UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

SHROYER BROS., INC.,                        )
                                            )
                    Plaintiff,              )
                                            )
            vs.                             )        No. 1:16-cv-00735-JMS-DML
                                            )
CRAIG  NICHOLS, TERRY WHITT                 )
BAILEY, JAMES  LEE, DOUG                    )
MARSHALL, AARON  WOOD, BRAD                 )
KING, and DEBRA  MALITZ,                    )
                                            )
                    Defendants.             )

## ORDER

Plaintiff Shroyer Bros., Inc. ("Shroyer") is a corporation engaged in the demolition contracting business in Delaware County, Indiana.  Defendants Craig Nichols, Terry Whitt Bailey, James Lee, Doug Marshall, Aaron Wood, Brad King, and Debra Malitz all hold various positions with the City of Muncie, Indiana.  This action stems from two separate incidents: (1) Shroyer performed demolition on a Budget Inn, discovered a concrete slab, and Defendants allegedly refused to perform a final inspection on the property and retained a portion of the owner's bond that Shroyer alleges it is entitled to; and (2) Shroyer contracted with the City of Muncie to perform demolition on a residential structure, had to stop mid-demolition due to a court order, was told after the order was lifted to resume demolition, but by then was working on another project and could not resume demolition that day so Defendants allegedly hired another entity to complete the project.

Shroyer asserts claims against Defendants for violation of 42 U.S.C. § 1983, conversion, and business defamation.  Presently pending before the Court are several motions, including: (1) Shroyer's Application for Judgment by Default, [Filing No. 51]; (2) Defendants' Motion to

1

Dismiss Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), [Filing No. 54]; (3) Shroyer's Motion to Strike Immaterial and Surplus Matter from Defendants' Motion to Dismiss for Failure to State a Claim, [Filing No. 58]; (4) Shroyer's Motion for Leave to Reply to Defendant's Response in Support of Dismissal, [Filing No. 66]; and (5) Shroyer's Request for Oral Argument, [Filing No. 69].

# I.
## MOTION FOR DEFAULT JUDGMENT

### A. Background

Shroyer filed its initial Complaint in this matter on April 1, 2016, [Filing No. 1], and Defendants acknowledged that they received the Complaint on April 2, 2016, through Waivers of Service, [Filing No. 11; Filing No. 12; Filing No. 13; Filing No. 14; Filing No. 15; Filing No. 16; Filing No. 17.] Sixty days later, on June 1, 2016, Defendants filed a Motion to Dismiss. [Filing No. 26.] On August 31, 2016, the Court granted in part and denied in part Shroyer's Motion for Leave to Amend, requiring Shroyer to file an Amended Complaint within five days of the Order. [Filing No. 40.] Shroyer filed its Amended Complaint on September 2, 2016, [Filing No. 41], and Defendants filed their responsive pleading – the pending Motion to Dismiss – on September 19, 2016, [Filing No. 54].

### B. Discussion

In its Motion for Default Judgment, Shroyer argues that Defendants were required to respond to the Amended Complaint within fourteen days of service or the balance of their original 60 days to respond to the initial Complaint, whichever was longer. [Filing No. 51 at 1-2.] Shroyer contends that the 60-day period to respond to the initial Complaint had expired on June 1, 2016, so Defendants had fourteen days to respond to the Amended Complaint under Fed. R. Civ. P. 15(a)(3). [Filing No. 51 at 2.] It asserts that the fourteen-day period expired on September 16,

2016, but Defendants did not file their Motion to Dismiss until September 19, 2016.  [Filing No. 51 at 2.]  Shroyer requests a money judgment in its favor of $60,000 against Defendants Nichols, Lee, Marshall, Wood, Malitz, and King; a money judgment in its favor of $10,545 against Defendant Bailey; judgment on the issue of liability against Ms. Bailey; an injunction prohibiting Defendants from "depriving [Shroyer] of the compensation already due it and the right to be treated equally with other demolition contract bidders, under applicable law, including an Order requiring the Plaintiff be regarded as a responsive bidder so long as it meets objective and applicable statutory or regulatory criteria"; and a judgment declaring that Defendants are liable to Shroyer "for financial losses resulting from treatment more onerous than other demolition contractors with which the City of Muncie contracts…."  [Filing No. 51 at 2-3.]

Defendants respond that September 19, 2016 (the day they filed the Motion to Dismiss) was actually the deadline for filing their responsive pleading to the Amended Complaint because they were afforded three additional days since they were "responding to a pleading via the Court's CM/ECF system."  [Filing No. 53 at 2 (citing and discussing Fed. R. Civ. P. 5).]

Shroyer did not file a reply.

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for a party seeking default judgment.  *McCarthy v. Fuller*, 2009 WL 3617740, at *1 (S.D. Ind. 2009); *see also Lowe v. McGraw-Hill Companies, Inc.*, 361 F.3d 335, 339 (7th Cir. 2004) ("The Federal Rules of Civil Procedure make a clear distinction between the entry of default and the entry of a default judgment.").  First, the plaintiff must obtain an entry of default from the Clerk.  Fed. R. Civ. Pro. 55(a).  Second, after obtaining that entry, the plaintiff may seek an entry of default judgment.  Fed. R. Civ. Pro. 55(b).  The plaintiff "is not permitted to bypass the necessary step of obtaining an

entry of default" before seeking an entry of default judgment. *Proassurance Indemnity Company, Inc. v. Wagoner*, 2016 WL 231315, *1 (S.D. Ind. 2016) (citation and quotation omitted).

Shroyer has not moved for a Clerk's entry of default pursuant to Federal Rule of Civil Procedure 55(a), and its Motion for Default Judgment can be denied on that basis alone. But the motion also fails substantively. The parties appear to agree that Defendants' responsive pleading was originally due September 16, 2016 under Fed. R. Civ. P. 15(a)(3) ("Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later"). [*See* Filing No. 51 at 2 (Shroyer arguing that "[t]he fourteen-day period for response under Rule 15(a)(3) expired no later than midnight on Friday, September 16, 2016…."); Filing No. 53 at 1-2 (Defendants arguing that responsive pleading was due three days after original due date, and using September 16, 2016 as original due date).]

Defendants are correct, however, that they were entitled to an additional three days to file their responsive pleading because the Amended Complaint was served electronically. *See* Fed. R. Civ. P. 5(b)(2)(E) (allowing service by "sending it by electronic means if the person consented in writing – in which event service is complete upon transmission, but is not effective if the serving party learns that it did not reach the person to be served"); Fed. R. Civ. P. 6(d) (version of the rule in effect before December 1, 2016 providing that "[w]hen a party may or must act within a specified time after service and service is made under Rule 5(b)(2)(C), (D), (E), or (F), 3 days are added after the period would otherwise expire under Rule 6(a)").[1] Accordingly, Defendants timely

---

[1] Rule 6 was amended, effective December 1, 2016 (after Defendants filed the Motion to Dismiss), to "remove service by electronic means under Rule 5(b)(2)(E) from the modes of service that allow 3 added days to act after being served." Fed. R. Civ. P. 6, comment to 2016 Amendment.

filed their Motion to Dismiss on September 19, 2016 – seventeen days after they received electronic service.  Shroyer's Application for Judgment by Default, [Filing No. 51], is **DENIED**.

## II.
### MISCELLANEOUS MOTIONS

Before considering the substantive arguments Defendants raise in their Motion to Dismiss, the Court will consider three other motions – Shroyer's Motion to Strike Immaterial and Surplus Matter from Defendants' Motion to Dismiss for Failure to State a Claim, [Filing No. 58], Shroyer's Motion for Leave to Reply to Defendant's Response in Support of Dismissal, [Filing No. 66], and Shroyer's Request for Oral Argument, [Filing No. 69].  This is necessary because the motions relate to the scope of information that the Court could consider in deciding the Motion to Dismiss.

### A.  Motion to Strike

Shroyer moves to strike portions of Defendants' Motion to Dismiss, raising several arguments.  First, Shroyer argues that Defendants discuss allegations they made in a state court proceeding, and then contradict themselves through arguments made in this case.  [Filing No. 58 at 5.]  Second, Shroyer asserts that Defendants "persistently inform the court what [it] must prove at trial," and that "the only issue arising under Rule 12(b)(6) is what must be pleaded to state a claim."  [Filing No. 58 at 5-6.]  Third, Shroyer argues that in their Motion to Dismiss Defendants rely on facts which contradict the facts pled in the Amended Complaint – which must be accepted as true at the motion to dismiss stage.  [Filing No. 58 at 6-7.]  Finally, Shroyer contends that Defendants mischaracterize the facts that are pled in the Amended Complaint.  [Filing No. 58 at 7-10.]

In response, Defendants argue that material can only be stricken from a pleading, not a brief, as Shroyer requests here.  [Filing No. 65 at 1-2.]  They assert that the Motion to Strike simply

rehashes arguments that are raised in Shroyer's response to the Motion to Dismiss, and go on to specifically address each of Shroyer's arguments. [Filing No. 65 at 4-9.]

Local Rule 56-1(i) states that "[t]he court disfavors collateral motions – such as motions to strike – in the summary judgment process. Any dispute over the admissibility or effect of evidence must be raised through an objection within a party's brief." While this rule applies in the summary judgment context, the Court finds it appropriate in the motion to dismiss context as well. The arguments that Shroyer has raised in its Motion to Strike are all arguments it could have – and in some cases, did – raise in response to Defendants' Motion to Dismiss. Shroyer is not entitled to another brief in which to raise arguments against dismissal. Additionally, Shroyer's arguments relate to the facts the Court should consider in deciding the Motion to Dismiss, and in most cases relate to Defendants not following the correct standard. The Court is capable of applying the correct standard to the facts discussed by the parties, and deciding which of those facts are properly considered based on the motion to dismiss standard. It will not nit-pick the way that Defendants have characterized facts through a Motion to Strike, but rather will only consider the well-pled facts in the Amended Complaint when considering the Motion to Dismiss. Shroyer's Motion to Strike Immaterial and Surplus Matter from Defendants' Motion to Dismiss for Failure to State a Claim, [Filing No. 58], is **DENIED**.

### B.  Motion for Leave to File Surreply

Shroyer also moves to file a surreply to Defendants' reply brief in support of their Motion to Dismiss. [Filing No. 66.] It argues that "the Federal Rules of Civil Procedure neither explicitly require nor prohibit the Plaintiffs' [Surreply], [and] justice demands the Plaintiff be permitted to correct misstatements of law and fact to be found in that Memorandum." [Filing No. 66 at 1.] Shroyer submits its proposed surreply, which focuses on allegations in the Amended Complaint

and argues that those allegations support the claims that Shroyer has asserted.  [Filing No. 66-1 at 1-2.]

Defendants respond that the Local Rules do not provide for a surreply on a motion to dismiss, and that leave to file a surreply should only be given when new matters are argued in a reply brief.  [Filing No. 67 at 1.]  Defendants argue that Shroyer's proposed surreply does not address new matters raised for the first time in a reply brief.  [Filing No. 67 at 1-3.]

Defendants are correct that the Local Rules do not give the non-movant an opportunity to file a surreply in opposition to a motion to dismiss.  And while the Local Rules do provide for a surreply in connection with a motion for summary judgment, one can only be filed "if the movant cites new evidence in the reply or objects to the admissibility of the evidence cited in the response," and "must be limited to the new evidence and objections."  L.R. 56-1(d).  Here, even if a surreply were permitted in the motion to dismiss context under the same circumstances as it is in the summary judgment context, Shroyer's proposed surreply would still be inappropriate.  In the proposed surreply, Shroyer does not address any new matters raised by Defendants in their reply brief – indeed, it makes no attempt to argue that Defendants raised new matters.  [Filing No. 66-1.]  It appears that Shroyer simply seeks another bite at the apple, to rehash its arguments in opposition to dismissal, and this is not permitted.  Shroyer's Motion for Leave to Reply to Defendant's Response in Support of Dismissal, [Filing No. 66], is **DENIED**.

### C.   Request for Oral Argument

Shroyer's Request for Oral Argument states that "a hearing is the most time-efficient means of resolving disputes on the issues" raised in the Motion to Dismiss.  [Filing No. 69.]  Defendants oppose the request.  [Filing No. 70.]

The parties' briefs have afforded the Court an adequate basis on which to rule on the pending Motion to Dismiss without the assistance of oral argument.  The Court, therefore, **DENIES** Shroyer's Request for Oral Argument, [Filing No. 69].

### III.
### DEFENDANTS' MOTION TO DISMISS

### A.  Standard of Review

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  "Specific facts are not necessary, the statement need only 'give the defendant fair notice of what the…claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).

A 12(b)(6) motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  In reviewing the sufficiency of the complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff.  *See Active Disposal, Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011).  The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief.  *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011).  Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level."  *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012).  This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

## B. Background

The factual allegations in Shroyer's Amended Complaint, which the Court must accept as true in connection with the Motion to Dismiss, are as follows:

### 1. Defendants' Employment With the City of Muncie

Defendant Craig Nichols is the Building Commissioner for the City of Muncie, where he has "the sole discretion to decide whether a given structure in the City of Muncie is unsafe and must be demolished." [Filing No. 41 at 2.] Once Mr. Nichols makes a decision regarding demolition, the City of Muncie puts the demolition projects out for bid based on his decision. [Filing No. 41 at 2.] Mr. Nichols has "the sole authority to a) obligate the City's Unsafe Building Fund to compensate contractors who demolish condemned buildings for the City of Muncie, and b) recover that expenditure by placing priority liens on real and personal property titled to the record owners of the demolished buildings." [Filing No. 41 at 2.] Mr. Nichols is also the sole or majority owner of Advanced Walls and Ceilings, Inc. ("Advanced"), a Delaware County business which bids and quotes for demolition contracts with the City of Muncie and the Muncie Sanitary District. [Filing No. 41 at 2.] As the owner of Advanced, Mr. Nichols is in direct competition with Shroyer for demolition contracts in the City of Muncie. [Filing No. 41 at 2.]

Defendant Terry Whitt Bailey is the Director of the City of Muncie's Community Development Department, and "has authority to commit certain City funds toward the demolition of unsafe buildings." [Filing No. 41 at 2.]

Defendants James Lee, Doug Marshall, Aaron Wood, Brad King, and Debra Malitz each hold a seat on the City of Muncie's Unsafe Building Hearing Authority ("UBHA"). [Filing No. 41 at 2-3.] Each was appointed to that position by the Mayor of Muncie, pursuant to Muncie City Ordinance. [Filing No. 41 at 3.] As members of the UBHA, these individuals have "the power

and authority to review the Building Commissioner's demolition orders, and vote to affirm, modify or rescind those orders." [Filing No. 41 at 3.] A decision of the UBHA is subject to judicial review, but only by a suit filed in Delaware Circuit Court within ten days of the decision. [Filing No. 41 at 3.]

### 2.  *The 2000 Contract*

On March 12, 2015, Shroyer contracted with Popatlal Patel to demolish the former Budget Inn located at 2000 North Martin Luther King Jr. Blvd. in Muncie (the "2000 Contract"). [Filing No. 41 at 5.] The 2000 Contract provided that Shroyer would be paid a total of $45,000 – "$25,000 due upon start," and "$20,000 due upon release of performance bond." [Filing No. 41-2 at 1.] As the City of Muncie's Building Commissioner, Mr. Nichols had access to a Phase One Environmental Site Assessment done by the City of Muncie on the Budget Inn, and should have known of a high probability that there were buried fuel tanks on the site. [Filing No. 41 at 5.] Acting as the City of Muncie's Building Commissioner, and without raising or alluding to any issues relating to fuel tanks that might be buried on the Budget Inn property, Mr. Nichols required Mr. Patel to post a performance bond totaling $70,000, which was procured to protect the City of Muncie in case the demolition was not complete. [Filing No. 41 at 5-6.]

Shroyer demolished the Budget Inn structure completely, and removed the concrete foundation and the asphalt which covered the parking lot that served the hotel. [Filing No. 41 at 6.] Mr. Nichols released $50,000 of the bond, but the UBHA retained the remaining $20,000 as Shroyer's final compensation for services once the foundations and asphalt were removed. [Filing No. 41 at 6.] When Shroyer removed the asphalt, it discovered a concrete slab. [Filing No. 41 at 6.] After the structure was gone and the debris was removed, Mr. Nichols refused to perform a final inspection or pass the property until Shroyer removed the concrete pad under the asphalt lot

and concrete and steel fuel tanks it encased which were buried on the property.  [Filing No. 41 at 6.]  On the advice of Mr. Nichols, the UBHA withheld Shroyer's income pending Shroyer's removal of the concrete pad and fuel tanks, even though the Indiana Department of Environmental Management informed Mr. Nichols that the tanks were safe.  [Filing No. 41 at 6.]

UBHA members have retained the balance of Mr. Patel's bond, until Shroyer removes the concrete pad and fuel tanks.  [Filing No. 41 at 6.]  This work was not included or anticipated in the 2000 Contract.  [Filing No. 41 at 6.]  Neither Mr. Nichols nor any UBHA members have offered to pay Shroyer anything additional for the extra work of removing the concrete pad and the fuel tanks.  [Filing No. 41 at 6-7.]  Shroyer believes that because it has refused to remove the concrete pad and fuel tanks without compensation, Mr. Nichols "has removed or will remove [Shroyer], his competitor, from the list of demolition contractors whose bids for City contracts will be received and considered."  [Filing No. 41 at 7.]  Despite its refusal to pass the Budget Inn demolition for inspection, the UBHA discharged a mobile home park demolition in Muncie that had concrete slabs, unfilled foundation holes, debris, and other holes remaining.  [Filing No. 41 at 7.]

### 3.  The 812 Contract

On December 2, 2015, Shroyer entered into a contract with the City of Muncie to demolish a structure at 812 West 11th Street in Muncie (the "812 Contract").  [Filing No. 41 at 7.]  The 812 Contract provided that Shroyer would be paid $4,137 for the demolition.  [Filing No. 41 at 7.]  The 812 Contract gave Shroyer thirty days to complete demolition after issuance of a Notice to Proceed, which issued on December 15, 2015.  [Filing No. 41 at 7-8.]  The thirtieth day after the Notice to Proceed was issued was January 14, 2016.  [Filing No. 41 at 8.]

On December 15, 2015, after Shroyer had started demolition, the Delaware Circuit Court issued an Order prohibiting the City of Muncie from demolishing the structure at 812 West 11th

Street.  [Filing No. 41 at 8.]  Shroyer employees were escorted off the premises by Muncie police officers, and were not permitted to secure the property against trespass.  [Filing No. 41 at 8.] Shroyer alleges that the Order made Shroyer's performance under the 812 Contract impossible, and that Shroyer's performance deadline was consequently tolled.  [Filing No. 41 at 8.]

On January 5, 2016, the Delaware Circuit Court issued an Order allowing demolition to resume.  [Filing No. 41 at 8.]  On January 8, 2016, Ms. Bailey notified Shroyer to resume demolition.  [Filing No. 41 at 8.]  Shroyer officials left a voicemail for Ms. Bailey and responded by email later on January 8, confirming that Shroyer would resume demolition on January 14, 2016 (its original deadline to complete demolition).  [Filing No. 41 at 8.]  On January 14, Shroyer informed Ms. Bailey that it could not resume demolition that day because it was working at another site that was secured by the Daleville City Police Department and required the closure of Indiana State Road 32, and that abandoning that site would waste resources of the City of Daleville at Shroyer's expense.  [Filing No. 41 at 8-9.]  Ms. Bailey responded that Shroyer had to complete demolition by 5:00 that day, January 14, and that any failure to do so would be considered a breach of the 812 Contract.  [Filing No. 41 at 9.]

Because Shroyer could not perform the demolition on January 14, and claiming that a public emergency existed, Ms. Bailey asked the Muncie Board of Public Works to hire another company to finish removing and filling the basement at 812 West 11th Street.  [Filing No. 41 at 9.]  Shroyer claims that no such emergency existed.  [Filing No. 41 at 9.]  The other company was paid from the funds the City had agreed to pay Shroyer under the 812 Contract.  [Filing No. 41 at 9.]  Shroyer is concerned that its failure to complete work under the 812 Contract has contributed to, or will lead to, Mr. Nichols and Ms. Bailey removing Shroyer from the list of responsive bidders for City demolition projects.  [Filing No. 41 at 9.]

12

### 4.  *The Lawsuit*

Shroyer initiated this litigation on April 1, 2016, [Filing No. 1], and filed the operative Amended Complaint on September 2, 2016, [Filing No. 41].  Shroyer alleges the following claims against Defendants: (1) violation of 42 U.S.C. § 1983; (2) conversion; and (3) business defamation. [Filing No. 41 at 9-17.][2]

### C.  Discussion

Defendants argue that Shroyer fails to allege an actionable claim under § 1983, or for conversion or business defamation.  [Filing No. 55 at 9-20.]   The Court will address the adequacy of each of Shroyer's claims in turn.

### 1.  *§ 1983 Claim*

In connection with its § 1983 claim, Shroyer states that it filed the lawsuit "to vindicate and exert the rights of the Plaintiff to equal protection under the law, including the right[:] a) to perform and be compensated for private contracts without interference by Government officials; b) to hold choses in action and a valid expectation of payment for services rendered without let, hindrance or encumbrance from the State or its political subdivisions; c) to hold property of all sorts free of Government interference, unless due process results in a legitimate taking and adequate compensation, all as assured by the 13th and 14th Amendments to the Constitution of the United States…."  [Filing No. 41 at 3-4.]  Shroyer alleges that Defendants' actions "damaged

---

[2] Shroyer included a claim against Defendants for violation of 42 U.S.C. § 1981 in both the original Complaint and the Amended Complaint, but had abandoned the § 1981 claim during briefing of a previous Motion to Dismiss.  [Filing No. 29 at 10 (Shroyer stating "[t]he Plaintiff's Complaint never alluded to race because the Plaintiff has no claim under 42 USC Sec 1981.  That section is named by inadvertence…").]  Because Shroyer does not set forth any allegations supporting a § 1981 claim in the Amended Complaint, and because the parties do not discuss such a claim in their briefs related to the Motion to Dismiss, the Court assumes that Shroyer's passing reference to § 1981 in the Amended Complaint was a typographical error and that Shroyer simply failed to remove the reference when filing the Amended Complaint.

[Shroyer] financially, and were intended, either directly or indirectly, to benefit Defendant Nichols personally." [Filing No. 41 at 9.]  It asserts that Defendants "committed, consented to, conspired to commit, or authorized actions which were either a) criminal conversion, defined in State law as the knowing or intentional exercise of unauthorized control over [Shroyer's] property…; b) clearly outside the scope of the employee's employment; c) malicious; d) willful and wanton; and/or e) calculated to benefit one defendant personally." [Filing No. 41 at 9-10.]  The Court will first consider whether Shroyer states a § 1983 claim and, if so, will then consider whether qualified immunity shields any of the Defendants from liability.

a.   Whether Shroyer States a § 1983 Claim

Defendants argue that Shroyer fails to allege a claim under § 1983 because even assuming Defendants' actions were taken under color of state law, Shroyer "received $5,000.00 more than it stood entitled to receive under the 2000 Contract," and that any injury Shroyer sustained related to the 812 Contract was "because of its own action/inaction, not because of any actions by [Defendants]." [Filing No. 55 at 11.]  Defendants argue further that Shroyer did not request an extension under the 812 Contract, and that Shroyer's performance under the 812 Contract was not impossible. [Filing No. 55 at 11-12.]  Defendants note that Shroyer's allegations indicate that its own schedule, and not the actions of others, caused it to not be able to timely perform the 812 Contract. [Filing No. 55 at 12.]

Shroyer argues that it has stated a claim under § 1983 because it alleges that Defendants are persons, that they acted under color of state law, that they "subjected [Shroyer], or caused [Shroyer] to be subjected, to the deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States," and that Shroyer was injured by Defendants' actions. [Filing No. 61 at 2-3.]

On reply,[3] Defendants argue that Shroyer's response simply refers back to the Amended Complaint, which just contains "a formulaic recitation of the elements of a Section 1983 cause of action." [Filing No. 64 at 4.] Defendants reiterate the arguments they made in their initial brief, and also note that "[Shroyer] has included no well-pled facts in the Amended Complaint from which it could be held, let alone inferred, that the [Defendants] have prevented [Shroyer] from participating as a responsive bidder when the City of Muncie announces bidding on demolition projects." [Filing No. 64 at 5-6.] Defendants assert that even if Shroyer had alleged it was prevented from engaging in the bidding process, that would not constitute a § 1983 violation in any event. [Filing No. 64 at 6.]

42 U.S.C. § 1983 provides that "[e]very person who, under color of any…State…subjects, or causes to be subjected, any citizen of the United States...to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law…." To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that it was: (1) deprived of a federal right, privilege, or immunity; (2) by any person acting under color of state law. *Brown v. Budz*, 398 F.3d 904, 908 (7th Cir. 2005). "It is well-established that a plaintiff only may bring a § 1983 claim against those individuals personally responsible for the constitutional deprivation." *Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 614 (7th Cir. 2002).

"[T]he first step in [analyzing] any [1983] claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Here, Shroyer refers in

---

[3] The Court notes that Defendants' reply brief appears to be in a font smaller than 12 point. [Filing No. 64.] Local Rule 5-1(b) requires that "[a]ny pleading, motion, brief, affidavit, notice, or proposed order filed with the court, whether electronically or with the clerk, must…use at least 12-point type in the body of the document…." Local Rule 5-1(e) provides that "[t]he clerk will accept a document that violates this rule, but the court may exclude the document from the official record." Defendants' counsel is cautioned that future failure to comply with Local Rule 5-1 may result in exclusion of documents from the Court's consideration.

passing to rights under the Thirteenth and Fourteenth Amendments to the United States Constitution to "perform and be compensated for private contracts without interference by Government officials," "hold choses in action and a valid expectation of payment for services rendered without let, hindrance or encumbrance from the state or its political subdivisions," and "hold property of all sorts free of Government interference, unless due process results in a legitimate taking and adequate compensation…." [Filing No. 41 at 3-4.] Shroyer also refers to "involuntary servitude," [Filing No. 41 at 5], and vaguely alleges that Defendants conspired to violate its constitutional rights, [Filing No. 41 at 9 (Shroyer alleging that Defendants "committed, consented to, conspired to commit, or authorized actions")].

The Court notes at the outset that Defendants appear to agree, or at least assume for purposes of the Motion to Dismiss, that they acted under color of state law. [*See* Filing No. 55 at 10 (Defendants stating "Assuming *arguendo* that the City Defendants' actions were taken under color of state law, Plaintiff's Amended Complaint nonetheless fails to state sufficient well-pled facts to survive a motion to dismiss under Section 1983 under either contract discussed in the Amended Complaint") (emphasis in original).]

As to Shroyer's substantive allegations, while the Amended Complaint is not a picture of clarity, the Court discerns the following allegations in connection with Shroyer's § 1983 claims:

- In connection with the 2000 Contract, that Mr. Nichols required a performance bond of $70,000 on the 2000 Contract, released only $50,000 of the bond but retained the remaining $20,000 until the foundations and asphalt were removed, and advised the UBHA to withhold Shroyer's income on the 2000 Contract pending passing final inspection, which Mr. Nichols refused to perform, [Filing No. 41 at 5-6];

- Also in connection with the 2000 Contract, that Mr. Lee, Mr. Marshall, Mr. Wood, Mr. King, and Ms. Malitz, in their role as members of the UBHA, withheld Shroyer's income by refusing to release the bond, [Filing No. 41 at 6];

- In connection with the 812 Contract, that Mr. Lee, Mr. Marshall, Mr. Wood, Mr. King, and Ms. Malitz, in their role as members of the UBHA, withheld Shroyer's compensation, [Filing No. 41 at 9];

- That Mr. Nichols and Ms. Bailey have removed, or will remove, Shroyer from the list of demolition contractors whose bids for City contracts will be received and considered, [Filing No. 41 at 7; Filing No. 41 at 9]; and

- That Defendants acted to damage Shroyer financially, and to benefit Mr. Nichols personally.

The Court will consider whether Shroyer's allegations are sufficient to state claims for violation of the Thirteenth or Fourteenth Amendments, or conspiracy to violate those amendments.

### i.   Thirteenth Amendment

The Thirteenth Amendment provides that "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. amend. XIII, § 1. The Thirteenth Amendment was "intended 'to cover those forms of compulsory labor akin to African slavery.'" *Chapman v. Yellow CAB Cooperative*, 2016 WL 6956624, *7 (E.D. Wis. 2016) (quoting *United States v. Kozminski*, 487 U.S. 931, 942 (1988)).

Shroyer appears to allege that Defendants have violated his Thirteenth Amendment rights by refusing to release the bond related to the 2000 Contract until it performs additional work not covered by the contract. This allegation simply does not rise to the level of involuntary servitude contemplated by the Thirteenth Amendment. Indeed, in response to the Motion to Dismiss, Shroyer does not even mention the Thirteenth Amendment, nor cite to any authority to indicate that its allegations related to the 2000 Contract could support a violation of the Thirteenth Amendment. Shroyer's vague allegation that withholding the bond would cause it to have to work without compensation cannot support a claim that the Thirteenth Amendment has been violated. *See United States v. Hook*, 471 F.3d 766, 775 (7th Cir. 2006) (Thirteenth Amendment claim failed

where plaintiff "fail[ed] to provide any citation or basis for his assertion" that the circumstances constituted "enslavement"); *United States v. Lanzotti*, 205 F.3d 951, 957 (7th Cir. 2000) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)").

To the extent Shroyer alleges that Defendants' actions in connection with the 812 Contract violated the Thirteenth Amendment, those allegations also do not support such a claim. Shroyer's own allegations indicate that Shroyer ultimately did not perform the complete demolition under the 812 Contract – in fact, Shroyer alleges that Defendant's actions, and the state court order, prevented it from doing so. These allegations do not support a claim that Shroyer was forced into involuntary servitude, in violation of the Thirteenth Amendment.[4]

Shroyer does not set forth allegations that state a claim for violation of the Thirteenth Amendment "that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation and quotation omitted).

---

[4] Defendants argue repeatedly that Shroyer has not adequately alleged it was damaged in connection with the 2000 Contract because it was actually paid more than the $45,000 payment required under the 2000 Contract since the City released $50,000 of the $70,000 bond. [*See, e.g.*, Filing No. 55 at 11 ("Based on the facts set forth in the Amended Complaint, Plaintiff received $5,000.00 more than it stood entitled to receive under the 2000 Contract. Thus, no claim for damages exists").] While it is true that the 2000 Contract, which Shroyer attached to the Amended Complaint, provides that Shroyer is to be paid a total of $45,000, the 2000 Contract also provides that $20,000 of that $45,000 will be "due upon release of performance bond." [Filing No. 41-2 at 1.] Shroyer alleges in the Amended Complaint that the City has released $50,000 of the performance bond, but does not allege that it was then paid this amount by Mr. Patel. In effect, Defendants ask the Court to infer that this payment occurred, but Defendants are not entitled to such an inference, especially at the motion to dismiss stage of the litigation. In any event, as discussed above and below, Shroyer's allegations are inadequate to support a constitutional violation.

### ii.       Fourteenth Amendment

In the Amended Complaint, Shroyer appears to refer, in passing, to both the Due Process and Equal Protection clauses of the Fourteenth Amendment.  [*See* Filing No. 41 at 4 (Shroyer alleging that it is filing the suit to vindicate and exert its rights "to equal protection under the law" including "to hold property of all sorts free of Government interference, unless due process results in a legitimate taking and adequate compensation…."); Filing No. 41 at 7 (Shroyer alleging that it "is not receiving equal protection under the laws as administered by the Defendants").]  While these allegations are made in a "drive-by" fashion, the Court will consider them out of an abundance of caution.

The Fourteenth Amendment's Due Process Clause prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1.  A procedural due process claim – which is what Shroyer appears to allege here – requires Shroyer to allege "(1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process." *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010); *see also Belcher v. Norton*, 497 F.3d 742, 750 (7th Cir. 2007) ("In order to maintain successfully a procedural due process claim, the plaintiff[ ] must show that [it was] deprived of a constitutionally protected interest in life, liberty or property.  If the plaintiff[ ] can establish such a loss, we then must determine what process was due regarding that loss") (citing *Porter v. DiBlasio*, 93 F.3d 301, 305 (7th Cir. 1996)).

Here, Shroyer alleges that it filed the lawsuit to vindicate its rights to "hold property of all sorts free of Government interference, unless due process results in a legitimate taking and adequate compensation." [Filing No. 41 at 4.]  While the Court surmises that Shroyer relies on its allegations that it was not compensated for its work under the 2000 Contract, and was not permitted

19

to perform the 812 Contract, Shroyer does not allege that these were constitutionally protected rights nor does it provide any detail regarding any "process" of which it was deprived.[5]  And, as with its Thirteenth Amendment claim, Shroyer does not reference the Fourteenth Amendment's Due Process Clause at all in its response brief, nor even attempt to explain why it has such a claim. [*See* Filing No. 61 at 1-3 (in response to Defendants' dismissal arguments on its § 1983 claim, Shroyer merely repeats the elements of a § 1983 claim and states that it has adequately alleged such a claim).]

Additionally, Shroyer's own allegations indicate that it did not perform the 812 Contract because it had committed to work on another job on January 14 – the day that the City wanted Shroyer to resume demolition.  [Filing No. 41 at 8 (Shroyer alleging in the Amended Complaint that "[o]n the 14th the Shroyer brothers informed Ms. Bailey that they could not resume demolition on that day; they had work at another site that was secured by Daleville City Police and the closure of Indiana State Road 32, and to abandon that site would waste resources of the City of Daleville at [Shroyer's] expense").]   Whether Shroyer's non-performance was excused is a matter of contract interpretation, and does not turn Shroyer's claim in connection with the 812 Contract into a constitutional one.  *See Horwitz-Matthews, Inc. v. City of Chicago*, 78 F.3d 1248, 1250 (7th Cir. 1996) ("when a state repudiates a contract to which it is a party it is doing nothing different from what a private party does when the party repudiates a contract; it is committing a breach of contract. It would be absurd to turn every breach of contract by a state or municipality into a violation of

---

[5] Shroyer alleges that a decision of the UBHA is subject to judicial review through a suit filed in Delaware Circuit Court within ten days of the decision, [Filing No. 41 at 3], but tellingly does not allege that it sought judicial review of the UBHA's decision to withhold the bond on the 2000 Contract.  Shroyer did not pursue the process that was available.

the federal Constitution").  Shroyer has not adequately alleged a claim under the Fourteenth Amendment's Due Process Clause.

The Fourteenth Amendment's Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws, which essentially is a direction that all persons similarly situated should be treated alike." *Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 1000 (7th Cir. 2006) (citation omitted).  "All equal protection claims, regardless of the size of the disadvantaged class, are based on the principle that, under like circumstances and conditions, people must be treated alike, unless there is a rational reason for treating them differently."  *LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 941 (7th Cir. 2010) (citation and quotation omitted).

Again, Shroyer does not clearly allege an Equal Protection claim – it does not allege that it was treated differently than other, similarly situated, companies.  To the extent that it bases its Equal Protection claim on its allegation that Mr. Nichols and Ms. Bailey removed, or may have removed, Shroyer from the list of responsive bidders for City demolition projects, such an allegation falls far short of supporting that type of claim.

Specifically, Shroyer alleges that "[Shroyer's] failure to complete [the 812 Contract] per Defendant Bailey's demand has ostensibly contributed, or will ostensibly contribute, to Defendant Nichols and Defendant Bailey removing [Shroyer] from the list of responsive bidders for City demolition projects."  [Filing No. 41 at 9; *see also* Filing No. 41 at 7 (Shroyer alleging that "[b]ecause [Shroyer] has refused to do uncompensated work, it has good reason to believe that, under the color of his authority as a City official, Defendant Nichols has removed or will remove [Shroyer], his competitor, from the list of demolition contractors whose bids for City contracts will be received and considered").]  Shroyer's allegations do nothing more than raise the possibility

that Mr. Nichols and Ms. Bailey removed it, or will remove it, from the list of responsive bidders for City demolition projects.  These types of speculative allegations cannot support a constitutional claim.  *See Dahlia v. Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013) ("[I]t is well within [the Court's] wheelhouse to reject, as implausible, allegations that are too speculative to warrant further factual development"); *Oliver v. DirecTV, LLC*, 2015 WL 1727251, *3 (N.D. Ill. 2015) (allegations that defendants possibly used automatic telephone dialing system in support of plaintiff's Telephone Consumer Protection Act claim dismissed because allegations did not raise a plausible inference that defendants actually did so).[6]  In short, Shroyer has not adequately alleged a claim under the Fourteenth Amendment's Equal Protection Clause.[7]

---

[6] The Court also notes that Shroyer would not have standing to assert a claim relating to its future removal from the City's list of potential bidders.  *See Otrompke v. Skolnik*, 826 F.3d 999 (7th Cir. 2016) (holding plaintiff who sought to enjoin  enforcement of a bar admission rule had not alleged harm, and therefore did not have standing, because he had not yet applied for admission to the bar and "[t]he rule will harm him only if he would be admitted to the Indiana bar were the rule to be invalidated but not otherwise"); *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688, 692 (7th Cir. 2015) ("Allegations of future harm can establish Article III standing if that harm is certainly impending, but allegations of possible future injury are not sufficient") (citations and quotations omitted).  Moreover, Shroyer has not alleged that being included on the City's list of potential bidders is a constitutional right and, indeed, the Court cannot imagine that this is the case.  *See, e.g.*, *Coyne-Delaney Co., Inc. v. Capital Development Bd. of State of Ill.*, 616 F.2d 341, 343 (7th Cir. 1980) ("a potential supplier to the state has no property interest in having its product purchased or specified").

[7] Shroyer's one-sentence allegation that the UBHA determined that a mobile home park passed inspection and "discharged it" even though it had concrete slabs, unfilled holes, and debris at the site, [Filing No. 41 at 7], is not sufficient to allege an Equal Protection claim.  Shroyer provides no detail whatsoever regarding that demolition project, the company that performed the demolition, or other information that would indicate the circumstances were similar to the circumstances here.

### iii.    Conspiracy Allegations

As noted above, Shroyer alleges that Defendants "committed, consented to, conspired to commit, or authorized actions," but does not refer specifically to constitutional violations.  [Filing No. 41 at 9-10.]  This is the extent of Shroyer's conspiracy allegations.

"To establish Section 1983 liability through a conspiracy theory, a plaintiff must demonstrate that: (1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, and (2) those individual(s) were willful participants in joint activity with the State or its agents."  *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007) (internal citations omitted). "Vague and conclusory allegations of the existence of a conspiracy are not enough to sustain a plaintiff's burden; a complaint must contain factual allegations suggesting that the defendants reached a meeting of the minds" to violate plaintiff's constitutional rights. *Evers v. Reak*, 21 Fed. Appx. 447, 450 (7th Cir. 2001).

Here, Shroyer's conspiracy allegations could not be much vaguer.  The Amended Complaint does not contain any allegations that Defendants reached an understanding with each other to deprive Shroyer of its constitutional rights, nor that they were willful participants in a conspiracy.  To the extent Shroyer asserts a § 1983 conspiracy claim, it is not adequately pled and is dismissed.

### b.    Whether Qualified Immunity Applies

Because the Court has found that Shroyer has not adequately alleged a claim under § 1983, it need not consider Defendants' qualified immunity argument.  In the interest of thoroughness, however, the Court will briefly consider Defendants' argument.  Defendants argue that Mr. Lee, Mr. Marshall, Mr. Wood, Mr. King, and Ms. Malitz – all UBHA members – are entitled to qualified immunity because Shroyer does not allege that those individuals "had any final decision-making

authority in their official capacities with regards to any contracts with the Plaintiff." [Filing No. 55 at 13.]

Shroyer responds that UBHA members would only be entitled to qualified immunity to the extent that Shroyer seeks injunctive relief. [Filing No. 61 at 2.]

On reply, Defendants contend that UBHA members are entitled to qualified immunity from claims seeking monetary relief, not just injunctive relief, when they are sued in their personal capacities. [Filing No. 64 at 7.] They also argue that Shroyer does not directly address their qualified immunity argument. [Filing No. 64 at 7.]

"Government officials performing discretionary functions enjoy a qualified immunity…." *Leaf v. Shelnutt*, 400 F.3d 1070, 1079 (7th Cir. 2005). It is "*immunity from suit* rather than a mere defense to liability." *Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984, 988 (7th Cir. 2012) (emphasis in original) (citation and quotation marks omitted). "Qualified immunity gives government officials 'the benefit of legal doubts.'" *Rooni v. Biser*, 742 F.3d 737, 743 (7th Cir. 2014) (quoting *Elliott v. Thomas*, 937 F.2d 338, 341 (7th Cir. 1991)); *see also Findley v. Lendermon*, 722 F.3d 895, 899 (7th Cir. 2013) ("Qualified immunity protects public servants from liability for reasonable mistakes made while performing their public duties"). Its purpose is "to provide reasonable notice to government officials that certain conduct violates constitutional rights before a plaintiff can subject them to liability." *Narducci v. Moore*, 572 F.3d 313, 318 (7th Cir. 2009). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Once the defense of qualified immunity is raised, 'it

becomes the plaintiff's burden to defeat it.'" *Estate of Escobedo v. Martin*, 702 F.3d 388, 404 (7th Cir. 2012) (quoting *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008)).

"To determine whether a defendant is entitled to qualified immunity, courts must address two issues: (1) whether the defendant violated the plaintiff's constitutional rights and (2) whether the right at issue was clearly established at the time of the violation." *Rooni*, 742 F.3d at 742 (citation omitted).  The Court may decide these factors in either order. *Miller v. Harbaugh*, 698 F.3d 956, 962 (7th Cir. 2012).  If the right at issue was not clearly established at the time of the violation, the Court may exercise its discretion not to determine whether the defendant violated that plaintiff's constitutional right.  *See Pearson*, 555 U.S. at 236 ("[T]he judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand").

The Court notes that Shroyer does not directly address Defendants' qualified immunity argument, instead only stating that UBHA members may be entitled to qualified immunity from claims seeking injunctive relief.  [Filing No. 61 at 2 (Shroyer arguing that qualified immunity "does not give members of the [UBHA] immunity from suit under Section 1983 except to the extent that we ask for injunctive relief").]  As discussed above, once qualified immunity has been raised as a defense, it is the plaintiff's burden to defeat it. *Estate of Escobedo*, 702 F.3d at 404. Shroyer does not address the qualified immunity argument head-on, and certainly does not address what right Defendants' allegedly infringed upon, nor whether that right was clearly established. Shroyer has not sustained its burden of defeating qualified immunity.

Further, and in any event, the Court has already found that Shroyer has not adequately alleged the violation of a constitutional right.  Accordingly, Shroyer fails the first part of the two-

part test for determining whether qualified immunity applies.  *See Eversole v. Steele*, 59 F.3d 710, 717 (7th Cir. 1995) ("When a defendant raises the defense of qualified immunity, this court engages in a two-part, objective inquiry: the court must determine (1) whether the plaintiff has asserted a violation of a federal constitutional right, and (2) whether the constitutional standards implicated were clearly established at the time in question…. The first part of this two-part test is a threshold issue that can defeat entirely a claim of qualified immunity.  If a plaintiff's allegations, even when accepted as true, do not state a cognizable violation of constitutional rights, then the plaintiff's claim fails") (citations and quotations omitted).

In sum, Shroyer's allegations regarding any constitutional violations are vague and conclusory, and are insufficient to adequately allege a § 1983 claim.  The Court notes that Shroyer's remedies in connection with the 2000 Contract and the 812 Contract may be more properly sought through breach of contract claims against the parties Shroyer contracted with.  In terms of the 2000 Contract, Shroyer alleges that it contracted with Mr. Patel, so Mr. Patel is the party that owes him money for work performed under the contract.  As for the 812 Contract – entered into with the City of Muncie – the involvement of City officials or employees does not automatically constitutionalize Shroyer's claims.  *See Horwitz-Matthews, Inc.*, 78 F.3d at 1250 ("when a state repudiates a contract to which it is a party it is doing nothing different from what a private party does when the party repudiates a contract; it is committing a breach of contract.  It would be absurd to turn every breach of contract by a state or municipality into a violation of the federal Constitution"); *Taake v. County of Monroe*, 530 F.3d 538, 541-42 (7th Cir. 2008) ("we have refuted the notion that [constitutional violations are] at issue simply because a state actor allegedly broke a contract with a citizen").  The City's refusal to pay Shroyer in connection with the 812 Contract, and any issues related to Shroyer's non-performance of the 812 Contract, are

more properly viewed through the lens of a breach of contract claim.  Shroyer simply has not alleged that Defendants' actions in connection with the 2000 Contract or the 812 Contract (including possibly removing it from the City's list of responsive bidders for demolition projects) rise to the level of constitutional violations.  Defendants' Motion to Dismiss is **GRANTED** as to Shroyer's § 1983 claim.

### 2.  State Law Conversion and Defamation Claims

Because the Court is dismissing Shroyer's § 1983 claim, Shroyer's only remaining claims are those brought under Indiana state law.  Accordingly, the Court must determine whether to exercise its discretion to retain jurisdiction over those claims pursuant to 28 U.S.C. § 1367(a).

The district court ultimately has discretion whether to exercise supplemental jurisdiction over a plaintiff's state law claims.  *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009); 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim…if…the district court has dismissed all claims over which it has original jurisdiction….") (citation and quotation omitted).  When deciding whether to exercise supplemental jurisdiction, "'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'"  *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).  "In the usual case in which all federal claims are dismissed before trial, the balance of these factors will point to declining to exercise jurisdiction over any remaining pendent state-law claims rather than resolving them on the merits."  *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994).

This litigation is in the early stages.  Defendants have not yet even answered the allegations of Shroyer's Amended Complaint, and no discovery has taken place.  Accordingly, the Court

concludes that all four factors – economy, convenience, fairness, and comity – strongly weigh in favor of it relinquishing supplemental jurisdiction over Shroyer's state law claims and dismissing those claims without prejudice.  Defendants' Motion to Dismiss as to Shroyer's conversion and defamation claims is **GRANTED**.

## IV.
### CONCLUSION

For the foregoing reasons, the Court:

- **DENIES** Shroyer's Application for Judgment by Default, [Filing No. 51];

- **DENIES** Shroyer's Motion to Strike Immaterial and Surplus Matter from Defendants' Motion to Dismiss for Failure to State a Claim, [Filing No. 58];

- **DENIES** Shroyer's Motion for Leave to Reply to Defendant's Response in Support of Dismissal, [Filing No. 66];

- **DENIES** Shroyer's Request for Oral Argument, [Filing No. 69]; and

- **GRANTS** Defendants' Motion to Dismiss Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), [Filing No. 54].  Shroyer's § 1983 claim is **DISMISSED WITH PREJUDICE**,[8] and its state law conversion and defamation claims are **DISMISSED WITHOUT PREJUDICE**.  Final judgment shall enter accordingly.

---

[8] Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), a plaintiff may amend its complaint as a matter of course in response to a motion to dismiss. *Brown v. Bowman*, 2011 WL 1296274, *16 (N.D. Ind. 2011).  The 2009 notes to that rule emphasize that this amendment "will force the pleader to consider carefully and promptly the wisdom of amending to meet the arguments in the motion.  A responsive amendment may avoid the need to decide the motion or reduce the number of issues to be decided, and will expedite determination of issues that otherwise might be raised seriatim."  Shroyer amended its Complaint once in response to Defendants' first motion to dismiss, however did not revise its allegations relating to the § 1983 claim despite being aware of Defendants' arguments in support of dismissal.  Shroyer then chose to brief the current Motion to Dismiss and adjudicate the issues.  The Court is not required to give Shroyer another chance to plead its § 1983 claim because it has already had multiple opportunities to cure deficiencies in its pleadings.  *See Emery v. American General Finance, Inc.*, 134 F.3d 1321, 1323 (7th Cir. 1998). Further, Shroyer has not given any indication that it could, in fact, successfully amend its complaint to cure the defects identified above, even if given the opportunity to do so.  Considering the procedural history of this case, particularly the fact that Shroyer has already had the opportunity to re-plead its allegations, the Court, in its discretion, dismisses Shroyer's § 1983 claim with prejudice.

Date: 12/28/2016

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**<u>Distribution via ECF only to all counsel of record</u>**

29